FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 22, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANCY P., | NO: 4:21-CV-5018-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Nancy P.[1], ECF No. 11, and the Commissioner of Social Security ("Commissioner"), ECF No. 13. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* ECF No. 11 at 2. Having considered the parties' motions, the administrative record,

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants summary judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI on June 7, 2019, alleging disability beginning on March 1, 2018.  Administrative Record ("AR")  145.  Plaintiff maintained that the following conditions limit her ability to work: "regional simplex dystrophy (RSD), generalized stiffness"; "trigger finger middle and index finger, loud popping"; "sensitivity to cold and touch, loss of muscle"; "retin accullular cysts left index finger"[2]; "volar aspect of index finger metacarpal"; "life threatening CDIF, weight loss"; sleep disturbances; muscle cramps; chronic fatigue; depression; and anxiety.  AR 174.  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 68–82.

### *Administrative Hearing*

On June 18, 2020, Administrative Law Judge ("ALJ") Stewart Stallings held a hearing telephonically[3] at which he heard from Plaintiff and Vocational Expert

---

[2] This condition is written "retinacular cyst . . . at left index finger" elsewhere in the record.  AR 886.

[3] The ALJ explained on the record that the hearing was being held telephonically due to the COVID-19 pandemic, and Plaintiff consented to proceeding by telephone.  AR 31.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Carrie Whitlow.  AR 29–67.  Plaintiff was represented by attorney Timothy

Anderson.  AR 29.

Plaintiff testified that she was self-employed cleaning houses prior to and

during the onset of her allegedly disabling symptoms.  AR 35.  Plaintiff underwent

hand surgery in December 2018, and Plaintiff maintains the "overload of antibiotics"

that she took after the surgery "ruined" her stomach and "started" a series of health

problems that by the time of the hearing included diagnoses of "severe Crohn's

disease" and lupus.  AR 35, 39.  Plaintiff also indicated that she was experiencing

"chemo fog," but did not specify what condition she was undergoing chemotherapy

to treat.  *See* AR 35.

Plaintiff recalled that when she first sought treatment from primary care

provider Michael Adling, D.O., in March 2018, she was waking up with swelling

and throbbing pain in her left hand, which is her dominant hand, and would try to

relieve the pain and swelling by applying heat or cold to the area and taking

ibuprofen.  AR 43.  Around that time, Plaintiff also was experiencing abdominal

pain.  AR 43–44.  Plaintiff testified that she began seeing a gastroenterologist to

determine the cause of the abdominal pain and spent one month in the hospital due

to gastrointestinal symptoms.  AR 43-44.

Plaintiff testified that she began to lose housekeeping accounts due to her need

to use the bathroom so often at clients' houses, and her fatigue, which resulted in her

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

arriving later at clients' houses and staying there longer.  AR 45–50.  Plaintiff

recalled that she was working only approximately eight to twelve hours per week.

AR 47.  Plaintiff doubted that anyone would have hired her for a "sit-down job"

because she has no history of working that way and still would need to use a

bathroom often during a shift.  AR 51.

Plaintiff testified that at the time of the hearing she was living on a farm with

her husband.  AR 43.  Plaintiff stated that her husband traveled for work "for months

at a time" and, recalling the spring and early summer of 2018, there were things that

she could previously do on the farm that became more of a struggle.  AR 43.

The ALJ asked VE Whitlow how Plaintiff's prior work cleaning houses would

be classified, and the VE responded that the work falls within the "Housekeeping

Cleaner" designation with an exertional level of light, despite Plaintiff describing

herself as occasionally lifting up to 100 pounds when she moved furniture.  AR 54.

The ALJ then asked the VE to consider a hypothetical person with Plaintiff's

age, education, and work experience who could work at a medium exertional level,

lift up to fifty pounds occasionally, lift and carry up to 25 pounds frequently.  AR

55.  The ALJ added that the hypothetical individual would be limited to frequent

handling and fingering with the left, dominant hand, and would need to be in close

proximity to a restroom.  AR 55–56.  The VE responded that an individual with

those requirements and characteristics could perform the work of an Industrial

Cleaner, with the caveat that while there are "more than a million" such jobs in the national economy, the VE "might erode those numbers by 50% to account for the fact that there are some environments where your access to a restroom would be . . . perhaps prohibitive for lack of a better way of saying it." AR 56–57. The VE also opined that the hypothetical person could perform the work of either a Store Laborer or a Laundry Laborer. AR 57.

Plaintiff's counsel asked the VE about whether, in a competitive work environment, employers generally allow workers to take breaks outside of the normal breaks provided to them. AR 59. The VE responded that employers generally do not tolerate time off task or loss of productivity more than ten percent of the working day. AR 59. Therefore, an employee's need to spend approximately 48 minutes of time outside of scheduled breaks using the bathroom during the day may be tolerated. AR 59–60. The ALJ added that employers allow people to use the bathroom outside of their normal breaks or lunch and the extent to which an employee's frequent use of the bathroom would be tolerated would depend on how long they would be gone from the workplace. AR 61.

Plaintiff's counsel also asked the VE to quantify an employer's tolerance for absenteeism, and the VE responded that "if someone is absent from work or showing up late on an ongoing basis more than one day per month . . . typically results in someone being terminated over time." AR 61.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

*ALJ's Decision*

On September 9, 2020, ALJ Stallings issued an unfavorable decision.  AR 15–24.  Analyzing Plaintiff's claim according to the five-step evaluation process, ALJ Stallings found:

**Step one:** Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2018.  AR 17.  Plaintiff did not engage in substantial gainful activity from her alleged onset date of March 1, 2018, through her date last insured.  AR 17.  Plaintiff's earnings records do not show income after the alleged onset date, but Plaintiff reported work through July 2019, earning approximately $400 per month.  AR 17 (citing AR 167).  However, this work activity did not rise to the level of substantial gainful activity.  AR 17.

**Step two:** Plaintiff has medically determinable impairments that, in combination, are severe: atrophic vaginitis, gastric ulcer, liver cyst, peptic ulcer, hiatal hernia, and mild esophagitis.  AR 17.  The ALJ further wrote that he considered evidence of dysuria, fatigue, low back pain, menopausal symptoms, pelvic pain, hematuria, and postoperative pain, "as those symptoms/conditions were assessed prior to the date last insured" and found that "there is minimal clinical evidence to corroborate or support the finding of significant impact on the claimant's ability to perform work-related activities as a result of these impairments."  AR 18.  The ALJ also considered the effect of other medical conditions diagnosed from

December 2018 until the date of the hearing, including pulmonary emboli, osteoarthritis and other degeneration of the hands and feet, fatty liver, depressive disorder, and anxiety disorder, and found that "meaningful evidence of these conditions does not exist prior to December 2018 or later, fully six months after the date last insured." AR 18.  The ALJ continued: "The record does not provide sufficient evidence to relate these impairments or their functional impact to the relevant period (prior to the date last insured).  Therefore, these conditions are not medically determinable for purposes of the claimant's Title II claim."  AR 18.

**Step three:** The ALJ concluded that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)).  AR 19.  Specifically, the ALJ found:

> The claimant's physical impairments do not manifest the signs, symptoms, and findings required to meet or medically equal any listing. In making this finding, the undersigned specially considered listings 5.05 (Chronic liver disease), 5.06 (Inflammatory bowel disease), and 6.00 (Genitourinary disorders). No treating or examining physician has recorded findings satisfying the criteria of any medical listing, nor does the evidence show medical findings that are equivalent in severity to the criteria of a medical listing. The discussion of the medical evidence throughout this decision supports this finding.

AR 19.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

1    **Residual Functional Capacity ("RFC"):** The ALJ found that, through the

2    DLI, Plaintiff had the RFC to perform "medium work as defined in 20 C.F.R.

3    404.1567(c) except the claimant must have constant proximity to restroom facilities

4    (*i.e.,* no outdoor field-type work in which bathrooms are not immediately

5    available)."  AR 19.

6        In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements

7    concerning the intensity, persistence, and limiting effects of her alleged symptoms

8    "are not entirely consistent with the medical evidence and other evidence in the

9    record" for several reasons that the ALJ discussed.  AR 20.

10    **Step four:** The ALJ found that Plaintiff has no past relevant work.  AR 22.

11    **Step five:** The ALJ found that Plaintiff was 58 years old on her DLI and,

12    consequently, is considered by the Social Security regulations as a person of

13    advanced age.  AR 22 (citing 20 C.F.R. § 404.156).  Plaintiff has at least a high

14    school education.  AR 22.  The ALJ found that, through the date last insured, there

15    are jobs that exist in significant numbers in the national economy that Plaintiff could

16    have performed considering her age, education, work experience, and RFC.  AR 22–

17    23.  Specifically, the ALJ recounted that given Plaintiff's ability to perform a full

18    range of medium work, with additional limitations that were posed by the ALJ to the

19    VE, the VE identified the following representative occupations that Plaintiff would

20    have been able to perform with her RFC: industrial cleaner, store laborer, and

21

laundry laborer.  AR 23.  The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 1, 2018, the alleged onset date, through June 30, 2018, Plaintiff's DLI.  AR 23.

The Appeals Council denied review.  AR 1–6.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A). Thus, the

definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a multi-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1594. Step one determines if she is engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that she has performed in the past.  If the claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously discount Plaintiff's subjective symptom
testimony?

2.    Did the ALJ erroneously discount the medical source opinion from
Plaintiff's treating physician?

**DISCUSSION**

***Plaintiff's Subjective Complaints***

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for
rejecting Plaintiff's testimony about the frequency and duration of breaks that she
would have required to work prior to the DLI.  ECF No. 11 at 3.  Plaintiff maintains
that the record contains evidence that Plaintiff's complaints of gastrointestinal
symptoms pre-dated the June 30, 2018 DLI and supports that she had symptoms that
would have prevented her from sustaining full-time work during the relevant period.
ECF No. 14 at 2–3.  Specifically, Plaintiff asserts that "the record contains reference
to fatigue, a symptom of Crohn's disease, in August 2017, several months prior to
the alleged onset date."  *Id.* at 2 (citing AR 221–24).  Plaintiff adds that the record
shows that Plaintiff established care with Dr. Adling in February 2018 after she had
been experiencing abdominal pain for one year, a symptom that Plaintiff maintains
is a primary symptom of Crohn's disease.  *Id.* (citing AR 233, 242–43).  Plaintiff

continues with a recitation of Plaintiff's history of seeking medical care for abdominal pain in April and May 2018, the addition of diarrhea and vomiting as symptoms by the second half of June 2018, and her abnormal weight loss by December 2018. *Id.* at 2–3 (citing AR 271–77, 232, 248, 280, 831–32, 941, and 958). Plaintiff argues that the ALJ acknowledged that Plaintiff was having gastrointestinal symptoms that would have required frequent and urgent bathroom use prior to her DLI. *Id.* at 3– 4 (citing AR 21).

The Commissioner responds that Plaintiff sought limited treatment for her gastrointestinal complaints before her DLI, and when she did seek treatment described her symptoms as acute rather than a lingering condition. ECF No. 13 at 5–6 (citing AR 22, 228, 234, 245, 271, 280, 296, and 299). The Commissioner further asserts that the ALJ reasonably relied on the evidence that Plaintiff continued to engage in heavy labor on her farm or ranch to find that Plaintiff's subjective complaints were inconsistent with her activities. ECF No. 13 at 7 (citing AR 20, 1101, 1105, and 1110).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (internal citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. Subjective symptom evaluation is "not an examination of an individual's character," and an ALJ must

consider all of the evidence in an individual's record when evaluating the intensity

and persistence of symptoms. *See* SSR 16-3p, 2016 SSR LEXIS 4 (2016).

In deciding whether to accept a claimant's subjective pain or symptom

testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear and convincing reasons for

doing so." *Smolen*, 80 F.3d at 1281.

The ALJ found that Plaintiff's level of daily activity was inconsistent with

Plaintiff's allegation that her gastrointestinal symptoms, as well as her left-hand

swelling and pain, prevented her from maintaining full-time work. AR 20. The ALJ

cited to records indicating that Plaintiff had been working less than full time for

months prior to March 1, 2018, when Plaintiff alleges that her symptoms became

disabling. AR 20 (citing AR 166–70). The ALJ also cited to medical records from

after the DLI, when Plaintiff alleges her symptoms continued and/or became worse,

indicating that, even then, Plaintiff was continuing to care for herself, do household

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    chores, and maintain the farm.  AR 20, 1101, and 1104.  The medical treatment

2    notes indicate that Plaintiff discussed with her provider how she could protect her

3    left little finger while she is doing "heavy activities, i.e., moving hay, animals, etc."

4    AR 1104; *see also* 1101 (medical record from a March 2019 visit indicating "The

5    patient cleans houses for her work almost daily as well as taking care of her animals,

6    feeding them at home as well.  Apparently her husband is out of town working

7    frequently so she is the one doing the chores at home.").  The record further reports:

8    "She apparently is a very avid skier since age 3 and questioned whether or not she

9    should ski anymore this season."  AR 1104.  These activities of daily living and

10   Plaintiff's continuing part-time work at levels that are not less than what she was

11   working pre-DLI are specific, clear, and convincing reasons for not fully accepting

12   Plaintiff's statements about the severity of her debilitation.

13        The ALJ also found that medical records do not "show much treatment, or

14   many abnormal diagnostic findings, prior to the date last insured."  AR 21–22.  The

15   administrative record offers substantial evidence supporting this finding.  *See* AR 78

16   (reciting Plaintiff's treatment history from February 2018 through DLI and noting

17   imaging and lab work "within normal limits from the history of having [epigastric]

18   pain which was relieved by food and aggravated by an empty stomach and its

19   location and the fact that she takes 2 ibuprofen nightly because of chronic headaches

20   the diagnosis was felt to be at least gastritis if not ulcer disease.").  Indeed,

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Plaintiff's own testimony was inconsistent with her claim that her symptoms were disabling before the DLI.  *See* AR 39 (Plaintiff's testimony that she could no longer leave her house due to Crohn's disease and lupus, which "all started" after her stomach was ruined by antibiotics after her December 2018 hand surgery).  The medical record indicating minimal treatment prior to the DLI, test results within normal limits considering Plaintiff's ingestion of ibuprofen, and Plaintiff's reports of acute rather than chronic symptoms prior to the DLI also amount to clear, specific, and convincing reasons to not fully credit Plaintiff's subjective symptom testimony.

Having reviewed the ALJ's decision and the record, the Court identifies several clear, specific, and convincing reasons, in the context of the full record, for not fully accepting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her claimed symptoms and their effect on her ability to work before the DLI.  Accordingly, the Court denies Plaintiff's Motion for Summary Judgment and grants summary judgment to the Commissioner with respect to this issue.  *See* ECF Nos. 11 and 13.

### Medical Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ erred in rejecting the second of two opinions from Plaintiff's treating physician, Michael Adling, D.O., assessing several of Plaintiff's impairments as severe.  ECF No. 11 at 17.   The Commissioner responds that the ALJ reasonably evaluated Dr. Adling's second opinion, asserting that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

Plaintiff's limitations were present prior to her DLI, and reasonably found the opinion unpersuasive.  ECF No. 13 at 15.

The Commissioner responds that the ALJ legitimately found that Dr. Adling did not support his opinion, offering "'little more than a vague reference to fatigue and the need to use the bathroom often[,]'" when "Dr. Adling's treatment notes, [which] do not show symptomology, treatment, or examination findings consistent with such severe limitations."  ECF No. 13 at 15 (quoting AR 21 and citing AR 228, 231, 234, and 236).  The Commissioner adds that Dr. Adling's treatment notes from the relevant period record normal findings, comparatively mild diagnoses, and no indication that Plaintiff mentioned either diarrhea or fatigue as an issue.  *Id.*

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive she finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 404.1520c(c).

1    Supportability and consistency are the "most important" factors, and the ALJ

2  must articulate how he considered those factors in determining the persuasiveness of

3  each medical opinion or prior administrative medical finding.  20 C.F.R. §

4  404.1520c(b)(2).  With respect to these two factors, the regulations provide that an

5  opinion is more persuasive in relation to how "relevant the objective medical

6  evidence and supporting explanations presented" and how "consistent" with

7  evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).

8  The ALJ may explain how he considered the other factors, but is not required to do

9  so, except in cases where two or more opinions are equally well-supported and

10  consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).

11    Courts also must continue to consider whether the ALJ's finding is supported

12  by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the

13  Commissioner of Social Security as to any fact, if supported by substantial evidence,

14  shall be conclusive . . . .").  Prior to issuance of the new regulations, the Ninth

15  Circuit required an ALJ to provide clear and convincing reasons to reject an

16  uncontradicted doctor's opinion and provide specific and legitimate reasons where

17  the record contains a contradictory opinion.  *See Murray v. Heckler*, 722 F.2d 499,

18  501–02 (9th Cir. 1983).  The Ninth Circuit has not yet ruled on whether its prior

19  caselaw requiring an ALJ to provide "clear and convincing" or "specific and

20  legitimate reasons" in the analysis of medical opinions still applies.  *See Thomas S.*

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

*v. Comm'r of Soc. Sec.*, No. C20-5083 RAJ, 2020 U.S. Dist. LEXIS 166729, at \*6 (W.D. Wash. Sep. 11, 2020).

While the parties do not dispute that the new regulations apply to Plaintiff's claim, they disagree as to the extent that the prior Ninth Circuit standards for rejecting medical opinion evidence continue to apply.  *See* ECF Nos. 11 at 16; 13 at 13–14.  However, courts in this District, as well as other district courts within the Ninth Circuit, previously have concluded that the new regulations displace the prior Ninth Circuit caselaw.  *See Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 U.S. Dist. LEXIS 43139, 2021 WL 864869, \*3-4 (E.D. Wash. Mar. 8, 2021), reversed on other grounds, No. 21-35360, 2021 U.S. App. LEXIS 36540 (9th Cir. Dec. 10, 2021); *Timothy Mitchell B. v. Kijakazi*, 2021 U.S. Dist. LEXIS 151191, 2021 WL 3568209, at \*5 (C.D. Cal. Aug. 11, 2021) (deferring to the new regulations); *but see Kathleen G. v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 210471, 2020 WL 6581012, at \*3 (W.D. Wash. Nov. 10, 2020) (applying the specific and legitimate standard under the new regulations).  This Court applies the standard set by the new regulations to Plaintiff's claims, but also considers whether the outcome would differ under the earlier Ninth Circuit caselaw setting standards for evaluation of medical opinions.

With respect to Dr. Adling, the ALJ found:

Michael Adling, D.O., completed a residual functional capacity assessment in October 2019. This assessment indicated the claimant

was unable to complete even sedentary work, and concluded the claimant would be absent four or more workdays per month. He stated the claimant required being in a lying position more than 16 hours per day. Dr. Adling is a treating source familiar with the claimant's conditions and limitations. However, by the terms of his own opinion, it relates only to the period from August 2019 forward. The claimant is required to establish disability by June 30, 2018. Therefore, this opinion is of no meaningful value in assessing the claimant's relevant residual functional capacity. It is not persuasive.

Dr. Adling completed an additional assessment in May 2020. Again, Dr. Adling reported the claimant's Crohn's disease and left hand pain prohibited working at even a sedentary level with the same absenteeism he previously reported. He further noted the claimant was unable to perform work duties due to the need to use the bathroom on a chronic basis. This assessment purported to relate these limitations to the first date of treatment, which by submitted records was no later than April 2018. This assessment is not persuasive. Dr. Adling's 2020 opinion reported the claimant required lying down more than ten hours per day, rather than the 16 hours per day noted in the 2019 evaluation. He did not identify the factors causing this considerable difference merely six months apart. Further, he does not identify the evidence clarifying why his earlier opinion the claimant's limitations began in August 2019 had changed to the first date of treatment. Dr. Adling checked a box indicating the claimant was unable to lift two pounds and/or was unable to stand or walk. However, his included narrative rationale offered little more than a vague reference to fatigue and need to use the bathroom often. This is insufficient evidence to show such extreme limitations, particularly given the claimant lived alone for months at a time, had an infrequent treatment history, and engaged in "heavy" exercise prior to the date last insured. Moreover, the objective record, including Dr. Adling's treatment notes, do not show symptomology, treatment, or examination findings consistent with such severe limitations. This assessment is not persuasive as inconsistent with the available record.

AR 20–21 (internal citations to the record omitted).

To be sure, medical evaluations made after the expiration of a claimant's

insured status are relevant to an ALJ's evaluation of the claimant's pre-DLI

condition.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1998).  Nevertheless, the

ALJ reasonably considered the length of Plaintiff's treatment relationship with Dr.

Adling; the supportability of the opinions Dr. Adling offered in his second

assessment, extending his opinions into the relevant period; and the consistency of

Dr. Adling's opinions with the medical record, including his own treatment notes.

The record substantiates that Dr. Adling's treatment notes from his

appointments with Plaintiff before her DLI do not show symptomology, treatment,

or examination findings consistent with his opinion that Plaintiff must lie down

sixteen hours a day or is unable to work full-time due to her need to use the

bathroom repeatedly.  *See* AR 21, 228, 231, 234, and 236.  As demonstrated by the

portion of the opinion quoted above, the ALJ's evaluation of Dr. Adling's opinion

was thorough and contained specific, clear, and convincing reasons for finding Dr.

Adling's opinion about the severity of Plaintiff's impairments unpersuasive.

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment, ECF No.

11, in remaining part, and grants the Commissioner's Motion for Summary

Judgment, ECF No. 13.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is

       **DENIED**.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1    2.    Defendant's Motion for Summary Judgment, **ECF No. 13**, is

2    **GRANTED**.

3    3.    Judgment shall be entered for Defendant.

4    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

5 Order, enter judgment as directed, provide copies to counsel, and **close the file** in

6 this case.

7    **DATED** February 22, 2022.

8

9    ___*s/ Rosanna Malouf Peterson*___
         ROSANNA MALOUF PETERSON
         Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23